## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**KRISTI E. ZIMMER,**

                  **Plaintiff,**

**-vs-**                                      **Case No.  6:15-cv-613-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                  **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.       BACKGROUND

### A.       Procedural History

Plaintiff filed applications for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2008 (Tr. 123-30). Plaintiff's applications were denied initially and upon reconsideration (Tr. 65-74). Plaintiff requested an administrative hearing, which was held on November 3, 2009 (Tr. 32-64). The administrative law judge ("ALJ") issued a decision denying

Plaintiffs applications on December 10, 2009 (Tr. 18-27),  Plaintiff filed a request for review, which the Appeals Council denied on April 15, 2011 (Tr. 1-6).  Plaintiff filed her first appeal in federal court on June 14, 2011 (Doc. 1), and on September 17, 2012, Magistrate Judge Morris (to whom the case had been reassigned as part of a court redistribution) reversed and remanded the case for the ALJ to reassess the severity of all of Plaintiff's medically terminable impairments; reconsider whether Plaintiffs impairments, in combination, meet or equal a listing; reconsider Plaintiffs testimony and other evidence of record; reassess Plaintiffs RFC; and, if warranted, vocational expert testimony.  R. 710.

On November 30, 2012, the Appeals Council ordered the ALJ to offer Plaintiff the opportunity for a new hearing. R. 714. In a decision dated December 10, 2013, the ALJ found Plaintiff not disabled as defined under the Act from May 1, 2008 to December 31, 2008 – the date she was last insured. R. 131, 178, 555.  Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on March 2, 2015.  R. 538.  Plaintiff filed this action for judicial review on April 16, 2015.  Doc. 1.

**B.      Medical History and Findings Summary**

Plaintiff was born on July 16, 1971, making her thirty-six years old on the alleged onset day of May 1, 2008 and 42 years of age on the date of the second  hearing. R 123. Plaintiff completed the twelfth grade and two college level training courses. R. 37, 170, 607-08.  She previously worked as a general manager (tanning salon owner), medical pre-certifications clerk, emergency room registration clerk, and cardiac monitor technician.  R. 568, 640.

Plaintiff testified she was awarded Social Security disability benefits from 1992 through 1997 due to surgery in her back, right shoulder, and migraine headaches. R. 674. Plaintiff testified she stopped receiving benefits after five years when she was retrained to monitor heart rates. R 675. Plaintiff also owned and managed a tanning salon which she thought would be easier on her back, but

ultimately determined it was not and she sold the business in 2008.  R. 675-76.  She did not return to employment after that.  R. 676.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of arthritis in her back and resulting back pain, spasms, and muscle pain, which radiated down to her left leg, carpal tunnel syndrome, headaches, fatigue, and depression. R. 137, 165, 181, 670-71, 678-79, 683.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease, chronic low back pain syndrome, and history of remote back surgery, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 560.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with certain non-exertional restrictions.. R. 563.  Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work. R. 568. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from May 1, 2008 (the alleged onset date) through December 31, 2008, the date she was last insured. R. 568.

Plaintiff now asserts two points of error.  First, she argues that the ALJ erred in applying the Eleventh Circuit's pain standard when considering Plaintiff's credibility and determining the residual functional capacity.  Second, she claims the ALJ erred by failing to set forth a proper rationale for giving little weight to the retrospective opinion of Plaintiff's pain management specialist.  Plaintiff additionally requests the case assigned to a different judge based what she alleges are the ALJ's mischaracterizations of the Record.  For the reasons that follow, the decision of the Commissioner is  is **REVERSED** and **REMANDED,** and the case will be reassigned to a different ALJ.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from

doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §

404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC, credibility, and the treating physician's retrospective opinion.

Plaintiff argues that the ALJ erred in finding her able to perform light work after failing to

properly consider Plaintiff's testimony despite the first remand and failing to adequately consider the

opinion of her treating pain management physician, Dr. Esmailzadeh.  The Commissioner argues that

substantial evidence supports the ALJ's credibility assessment and his decision to discount the August

2013 opinion of Dr. Esmailzadeh.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's

remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of

the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d),

416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory

statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073,

1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In determining whether a claimant's physical and mental impairments are sufficiently severe,

the ALJ must consider the combined effect of all of the claimant's impairments, and must consider

any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not

in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528,

534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of the combination of impairments when determining whether an individual is disabled.

*Id.*, 985 F.2d at 534.

In this second appeal, the ALJ found Plaintiff had the RFC to perform light work with certain

additional limitations:

> [Plaintiff] had the residual functional capacity to perform the full range of light work
> . . . except the claimant is able to occasionally lift/carry 11-20 pounds and frequently
> lift/carry up to 10 pounds. At one time, without interruption, [Plaintiff] can sit for 2-3
> hours, stand 1 hour, and walk 1 hour. In an 8-hour workday with normal breaks,
> [Plaintiff] can sit for 6-7 hours, stand 3-4 hours, and walk 2-3 hours. [Plaintiff] can
> continuously use both upper extremities for handling, fingering and feeling. [Plaintiff]
> can frequently use the upper extremities for reaching (overhead), reaching in all other
> directions, and pushing/pulling.... [Plaintiff can] ambulate without an assistive device,
> walk a block at a reasonable pace on rough or uneven surfaces.

R. 563.  Based on the residual functional capacity that the ALJ determined, he concluded that Plaintiff

was capable of performing her past relevant work. R. 568.  The ALJ accordingly found that Plaintiff

was not disabled from May 1 to December 31, 2008.  R. 568.

On September 17, 2012, Judge Morris reversed and remanded the ALJ's initial decision

because the ALJ had not properly evaluated Plaintiff's credibility with regard to her pain testimony,

and the ALJ's RFC was not supported by substantial evidence:

> [T]he ALJ determined Plaintiff's "statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent they are inconsistent'

with the RFC assessment finding Plaintiff capable of the full range of light work. . . .

Here, the ALJ noted there were "inconsistencies in claimant's testimony and reported statements that make the undersigned doubt the claimant's credibility" (Tr. 26). Specifically, the ALJ articulated four reasons for finding Plaintiff not credible. However, the reasons provided by the ALJ for discrediting Plaintiff's testimony are not supported by substantial evidence for the reasons discussed below.

First, the ALJ stated Plaintiff "alleged at the hearing she has carpel [sic] tunnel that prevents her from grasping objects and causes her hands [to] go numb" (Tr. 26). The ALJ found Plaintiff had not reported this to any of her treating or pain management physicians, and her ability "to pick up her car keys and grasp the steering wheel to drive are inconsistent with this allegation." Id. Upon review of the hearing' transcript and the record, the Court finds the ALJ misrepresented Plaintiff's testimony. With regards to her carpal tunnel, Plaintiff testified . . . [her] fingers go numb [and] ache [and she has] problems grasping [and] lifting objects. (Tr. 47). Contrary to the ALJ's representation, Plaintiff never testified that her carpal tunnel prevented her from grasping and picking up objects. She actually testified she could pick up her car keys, but had trouble at times. Thus, Plaintiff's allegation that she experiences numbness and achiness in her fingers and hands is not inherently inconsistent with her driving abilities. Additionally, the record reflects Plaintiff had reported her carpal tunnel symptoms to her physicians, was diagnosed with the condition and received treatment. On June 7, 2004, Plaintiff presented to Dr. Charles Stewart reporting "problems with pain and numbness in both hands" (Tr. 537). Dr. Stewart found Plaintiff's three "provocative tests for carpal tunnel [were] positive," diagnosed her with bilateral carpal tunnel, and gave her splints to wear. Id. On July 26, 2004, Plaintiff reported to Dr. Devin Datta she was experiencing numbness in all of her fingers and both hands (Tr. 273). Records from February 2006 and September 2009 reflect Plaintiff's reported history with carpal tunnel syndrome (Tr. 450, 532). These records belie the ALJ's assertion that Plaintiff never reported these symptoms to her physicians.

Second, the ALJ found "the range of the claimant's activities, including preparing simple meals, driving, showering, light house cleaning, and being able, on some days, to walk for thirty minutes and bath and feed her three year old daughter, are inconsistent with her complaints and do not support an inability to perform any work" (Tr. 26). Again, the Court finds the ALJ has not accurately represented Plaintiff's testimony regarding her activities of daily living, and this reason is not supported by substantial evidence. Plaintiff testified she does not take care of her daughter on her own, and her parents help her an average of five days a week (Tr 50). Plaintiff testified on an average day she gets up with her daughter, takes a shower, goes to her mother's house, takes her medication, lies down on a heating pad, sits with her daughter while she is eating or playing, watches movies in bed, and stays at her mother's house until after dinner (Tr. 52-53). She testified she has to lie down off and on all day for an hour and a half to five hours depending on her pain level (Tr. 55). She stated she never has a day where she does not need to use a heating pad and she uses heated seats in her car while driving (Tr 51, 55). She stated her mother and husband

do most of the cooking (Tr. 53). She stated her husband does the grocery shopping and yard work (Tr. 54). She stated she does light cleaning because "there are certain things that I have to do" but her mother and husband help her (Tr. 54 ). She testified it takes her thirty minutes to walk around a block and sometimes she is not able to make it all the way around (Tr. 49). She testified the most basic activities, such as walking, cooking, and washing dishes, take her a long time to complete (Tr. 49, 54).

Considering her testimony as a whole, Plaintiff testified to a fairly minimal range of daily activities that take a considerable toll on her. The activities cited by the ALJ in his decision - preparing simple meals, driving, showering, light house cleaning - are basic activities that most people must engage in on an average day, whether they are experiencing pain or not. The Eleventh Circuit has previously noted that a claimant's admission that she participates in "everyday activities of short duration, such as housework or fishing," does not necessarily disqualify the claimant from disability.

Here, the ALJ selected certain discrete admissions by Plaintiff about her daily activities, restated them out of context, and ignored her testimony that these activities are significantly affected by her pain. Contrary to the ALJ's assertion, Plaintiff's testimony of her limited daily activities is not inconsistent with her complaints of pain. Moreover, the ALJ acknowledged Plaintiff was only able "on some days" to walk for thirty minutes and bath and feed her three year old daughter (Tr. 26). The ability to do certain basic activities "on some days" does not necessarily translate into the ability to perform work functions eight hours a day for five days a week. Furthermore, activities in the home are not necessarily transferable to the "more grueling environment of the workplace," where the claimant may not have the freedom to rest or take medication at will. Accordingly, substantial evidence does not support the ALJ's finding that Plaintiff's activities of daily living "are inconsistent with her complaints and do not support an inability to perform any work."

Third, the ALJ stated Plaintiff "testified her pain is so severe that epidural injections and nerve blocks are ineffective," but she "admitted she does not take her pain medications consistently on a daily basis" (Tr. 26). Again, the ALJ misrepresents Plaintiff's testimony. Plaintiff testified that she goes to her mother's house every day so that her mother can care for her three year old daughter (Tr. 52). Plaintiff testified she does not take her pain medication until after she gets to her mother's house because she does not want to drive while on the medication as it slows down her response time and makes her loopy. Id. Plaintiff also testified that she does not take her pain medication every single day because it causes headaches, and she sometimes switches between Lortab and Percocet (Tr. 53). Plaintiff also testified her pain medications cause nausea and weight loss (Tr. 57). Thus, the ALJ's characterization of Plaintiff as non-compliant is not entirely accurate and ignores the reasonable explanation she provided for not taking her medication.

Fourth, the ALJ stated Plaintiff's claim that she is unable to work is inconsistent with the fact that she completed a course m phlebotomy and was able to obtain her phlebotomist certificate in August 2008. Plaintiff reported she attended the phlebotomy class twice a week for four hours and she brought a pillow and heating

pad with her (Tr. 183). She reported she had to get up several times during the class to walk or stretch her back. Id. At the hearing, Plaintiff testified she took the class because she hoped to return to work at the hospital where she had worked previously (Tr. 37). Although she completed the class, she was unable to complete her clinical requirements for employment. Id. Plaintiff testified she was assigned four-hour clinicals and could only work thirty minutes before having to stop and take breaks, and it was exhausting and painful for her (Tr. 37-38, 183). The Court finds Plaintiff's testimony regarding her attempt to become a phlebotomist is not inconsistent with her claim that she is unable to work. A sporadic ability to work or do certain activities is not inconsistent with finding that a claimant suffers disability.

In sum, the reasons provided by the ALJ for discrediting Plaintiff's pain testimony are not supported by substantial evidence. The Eleventh Circuit has held a reviewing court "cannot properly find that [an] administrative decision is supported by substantial evidence" when the ALJ reached his or her conclusion "by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). In the instant case, the ALJ focused only on those aspects of Plaintiff's testimony that supported his decision. Plaintiff's testimony, when considering her statements in context and as a whole, is not inconsistent with her claim of disabling pain. Thus, the Court finds the ALJ erred in evaluating Plaintiff's credibility and this case is due to be remanded for further proceedings.

R. 699-709 (citations omitted). Judge Morris specifically ordered the ALJ on remand to evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, to include: reassessment of the severity of all of Plaintiffs medically determinable impairments; reconsideration of whether Plaintiffs impairments, in combination, meet or equal a listing; reconsideration of Plaintiffs testimony and other evidence of record; reassessment of Plaintiffs RFC; and, if warranted, vocational expert testimony.  R. 709-10.

Now, on this second appeal of the ALJ's credibility determination, Plaintiff argues that the ALJ erred in failing to properly assess her credibility consistent with the Eleventh Circuit's requirements.  Plaintiff challenges the ALJ's characterization of Plaintiff's treatment as "routine and/or conservative in nature" and his determination that "the record lacks the type of clinical and laboratory abnormalities one would expect to find of a completely disabled individual and the claimant has not generally received the type of medical treatment one would expect for a totally

disabled individual. Many of the claimant's physical examinations during the relevant period were normal or showed only slight limitations." Doc. 18 (citing R. 566). TR 566.

The Commissioner argues that substantial evidence supports the ALJ partial discounting of Plaintiff's subjective complaints, which he found were "not credible because they were inconsistent with the objective medical evidence, which showed no evidence of nerve root compromise; normal EMG and nerve conduction studies; essentially normal physical examination findings; routine, conservative care with no evidence of hospital or emergency room visits; physician opinion; and fairly intact daily activities." Doc. 19 (citing R. 566-67).

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, Plaintiff had a lengthy history of back problems and had previously been on disability because of back and shoulder impairments for five years, from 1992 to 1997. R. 607. She had returned to work in 1997 as an emergency room registration employee; she later worked as a physician referral coordinator for five years. R. 608-09. However, her back condition had

-10-

deteriorated and to the point that she could not continue to physically do the work anymore for her tanning salon business, so she sold it in 2008. R. 611-12.  After she sold the tanning salon, she went to phlebotomy school but never worked as a phlebotomist.  R. 608, 613.

Plaintiff testified, and the medical records showed, that she had received epidural injections, physical therapy, medications, and exercise to relieve the pain, yet, she testified, the epidural injections and nerve blocks did not alleviate her pain. R. 686.  Plaintiff argues that the ALJ failed to consider her reasonable explanation why she did not pursue back surgery, *i.e.*, that she did not get the surgery due to a lack of money and time. R. 56.  Plaintiff cites her testimony in the first hearing that she would need 24 hour care for about 6 weeks and that she was hesitant to get another fusion because she already had one back surgery. R. 56. Plaintiff also testified she was taking Percocet, Lortab, Valium, Cymbalta, Fioricet, and Ambien, and the narcotics make her sick to her stomach sometimes. R. 687.

As in his first decision, the ALJ acknowledged that Plaintiff's treatment history provided a reasonable basis for some of the symptoms she alleged and that her impairments would impose some functional restrictions. R. 567.  However, the ALJ found "the totality of her statements regarding her limitations were inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude" her "from performing any work on a regular and continuing basis. It is for these reasons the claimant is found not fully credible." R. 567 (citing 20 C.F.R. §404.1529(c)(3), and SSR 96-7p).

Records from the treating orthopedist, Dr. Keller, during the relevant time period (May to December 2008), report that x-rays dated August 7, 2008 show degenerative disk disease at L5-S1 and an MRI dated August 22, 2008 shows a small left L5-S1 recurrent HNP with degenerative disk disease at L5-S1[1].  R. 303.  The August 2008 MRI report noted degenerative findings at L5-Sl with

---

[1]Apparently, no EMG/NCV was done at that point in time, as reflected in Dr. Keller's records.  R. 303

rnidline and left paracentral foraminal disk bulging. There was perhaps a mild grade left foraminal stenosis, but no evidence of significant compromise of the L5 nerve; there were also postsurgical findings at the L5-Sl level on the left side with perhaps mild epidural fibrosis at the level of the takeoff of the left Sl nerve root, although there is no extrinsic nerve root compromise or compression. R. 315. No other indication was identified to suggest acute abnormality, and degenerative findings were noted at the L5-Sl disk space. R. 315. Dr. Keller diagnosed Plaintiff with degenerative disk disease L5-S1 with possible small recurrence. R. 303. He advised Plaintiff of her options: 1. Live with this and do nothing; 2. Continue with nonsurgical modalities; 3. Proceed with surgical intervention. R. 303. The ALJ summarized Dr. Keller's treatment records in his RFC discussion, but noted that Plaintiff "decided to continue with prescription medications and try epidural steroids." R. 565. The ALJ also noted that the following month, in October 2008, Plaintiff complained to her primary care physician of worsening back discomfort and received an injection for pain. R. 565 (citing Ex. B9F). The next month Plaintiff reported to the pain management physician that she was getting no relief with Cymbalta, Neurontin, and Lortab, or epidural injections several years before; the physical exam noted rotation of the spine to the left was painful and straight leg raise was positive on the left. R. 565 (citing Ex. B8F). A nerve block in December 2008 did not provide much relief. R. 566 (citing Ex. B16F). EMG and nerve conduction studies performed in June 2009 were normal. R. 566 (citing Ex. B15F).

Based on this medical evidence, the ALJ "acknowledges that the claimant has received ongoing medical treatment for the alleged impairments following the date last insured of December 31, 2008." R. 566. The ALJ conceded that Plaintiff "may now be ill" and stated he was "sympathetic with the claimant's situation, however, disability is essentially a medical determination. The claimant cannot establish a disability without some medical evidence as to her condition during the relevant time period through the date last insured of December 31, 2008." R. 566.

-12-

The ALJ then described the medical evidence during the relevant period as reflecting that Plaintiff had undergone treatment to "some degree"–that he regarded as conservative– for her severe impairments:

> However, the record lacks the type of clinical and laboratory abnormalities one would expect to find of a completely disabled individual and the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Many of the claimant's physical examinations during the relevant period were normal or showed only slight limitations.
>
> X-rays and MRIs of the lumbar spine, performed during the relevant period, showed findings of severe degenerative disc disease. Specifically, there [were] degenerative findings at L5-Sl with midline and left paracentral foraminal disk bulging. There is perhaps a mild grade left foraminal stenosis, but no evidence of significant compromise of the L5 nerve. There are postsurgical findings at the L5-Sl level on the left side with perhaps mild epidural fibrosis at the level of the takeoff of the left Sl nerve root, although there is no extrinsic nerve root compromise or compression. No other indication is identified to suggest acute abnormality. Degenerative findings are noted at the L5-S1 disk space. EMG and nerve conduction studies were performed shortly after the date last insured but were normal.
>
> Physical examinations during the relevant period showed the claimant had a normal gait. She could walk on heels and toes. She had some tenderness and spasms on palpitation. Rotation to the left was reduced and painful. However, motor strength remained intact in all extremities and sensory modalities remained intact. At times, she had positive straight leg raises on the left. Although the claimant has received treatment for the allegedly disabling impairment(s), *that treatment has been essentially routine and/or conservative in nature.* The claimant was treated primarily with pain medications and minimal injections. The claimant reported that neither of these treatments was helping her pain however, she opted to continue with conservative care although surgery was an option. *She did not undergo any surgical intervention during the relevant period.* She did not require any emergency room care or hospital admission for her alleged impairments during the relevant period.

R. 566 (emphasis added).  Although Plaintiff had not proceeded with a second back surgery, two treating orthopedists, Dr. Datta in 2004 and Dr. Keller in 2008, had recommended additional back surgery as an option.  R. 273-74 ("At this time [in 2004], patient is considering surgery."); R. 303-044 (giving her the option to "proceed with surgical intervention").  In September 2008, Dr. Keller discussed treatment options including epidural steroids, surgical revision decompression, and instrumented fusion at L5-S1. R. 304.  Months later, in June 2009, Dr. Keller noted Plaintiff's reports

that her physical therapy and three epidural steroid injections had not helped; Dr. Keller opined that

Plaintiff would be helped with a posterior spinal fusion surgery and revision decompression, but that

the Plaintiff's pain would not be eliminated. R. 528.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated

reasons must be based on substantial evidence).   A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  As a matter of law,

the failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545

(11th Cir. 1988).

For a second time, the ALJ ignores Plaintiff's stated reasons for opting not to have the back

surgery in 2008 and mischaracterizes her testimony concerning her daily activities:

> The claimant has described daily activities, which are not limited to the extent one
> would expect, given the complaints of disabling symptoms and limitations. In an adult
> function report dated September 11, 2008, the claimant reported that she cares for her
> daughter and does everything for her. She can prepare and feed herself and her
> daughter simple meals. When she can, she will do light housekeeping. Sometimes her
> husband and mother help her cook, clean, and babysit. She has no problem with
> personal care. She can run errands and drive short distances. She can shop in stores
> and manage finances. She further reported completing a phlebotomy course in August
> 2008 with the intention of returning to work. (Ex. B3E)
>
> Overall, the undersigned is persuaded that the claimant's treatment history provides
> a reasonable basis for some of the symptoms alleged by the claimant and that her
> impairments would impose some restrictions in her ability to perform work related
> activities. However, the totality of her statements regarding her limitations are
> inconsistent with the objective evidence that does not demonstrate the existence of
> limitations of such severity as to preclude the claimant from performing any work on
> a regular and continuing basis. It is for these reasons the claimant is found not fully
> credible (20 C.F.R. § 404.1529(c)(3), and Social Security Ruling 96-7p).

R. 566-67.

-14-

As Plaintiff points out, the ALJ completely omitted from the credibility discussion the portion of Plaintiff's testimony in which she explained why she could not have the surgery–for lack of money and time, particularly someone to care for her two year old (in 2008) and herself 24 hours per day for the six-week recovery period; she was also hesitant because she had already had one back surgery. R. 177, 687.  Plaintiff testified her husband worked two full-time jobs with Brevard County and the Space Center, and was home every third day.  R.199, 691.  She was dependent on her parents for childcare, cooking, cleaning; whenever her parents were not home, she was at her parents' house five days per week. R. 199, 681-85.

The ALJ also misleadingly failed to accurately quote Plaintiff's explanation about the phlebotomy training, *i.e.*, that she regretted spending $1,000 for the training because she figured out during the assigned four-hour clinicals that she could not be on her feet for that length of time. R. 37-38, 183.  Judge Morris had noted the *same* omission in reversing the ALJ the first time:

> Plaintiff testified she was assigned four-hour clinicals and could only work thirty minutes before having to stop and take breaks, and it was exhausting and painful for her (Tr. 37-38, 183). The Court finds Plaintiff's testimony regarding her attempt to become a phlebotomist is not inconsistent with her claim that she is unable to work. A sporadic ability to work or do certain activities is not inconsistent with finding that a claimant suffers disability.

R. 708-09.  Previously, as quoted above, Judge Morris held in the first reversal that "the ALJ selected certain discrete admissions by Plaintiff about her daily activities, restated them out of context, and ignored her testimony that these activities are significantly affected by her pain." R. 705.  For the ALJ to make the *exact same* mischaracterizations of Plaintiff's testimony following Plaintiff's consistent testimony at the second hearing calls into question his impartiality.  Moreover, the ALJ's decision was not based on substantial evidence.   Accordingly, the ALJ's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

### B. Remand to a different ALJ

Plaintiff requests that the Court remand the case to be assigned to a different ALJ–for what would be the *second* remand and Plaintiff's *third* hearing–because the ALJ has mischaracterized Plaintiff's testimony in *two* decisions and she does not believe she can receive a "full and fair hearing" as required under the Social Security Regulations.  Under the particular circumstances of this case, the Court agrees.

Social Security Commission proceedings must meet the due process requirements of the Fifth Amendment. *Richardson v. Belcher*, 404 U.S. 78, 81 (1971). The district court will assess whether a claimant was afforded a full and fair hearing and may remand the case to the Commissioner with instructions to afford the claimant fair treatment. *See, e.g., Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Grant v. Shalala*, 989 F.2d 1332, 1346 (3d Cir. 1993); *Pearce v. Sullivan*, 871 F.2d 61, 63-64 (7th Cir. 1989). The due process requirement should be applied even more strictly in administrative proceedings than in judicial proceedings, because of the lack of procedural safeguards and the unique role of the ALJ. *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984) (citing N.L.R.B. v. Phelps, 136 F.2d 562, 563-64 (5th Cir. 1943)).  Regulations provide that a Social Security claimant should seek the disqualification of an ALJ at the earliest opportunity. 20 C.F.R. §§ 404.940, 416.1440. If the ALJ refuses to step aside, the claimant can seek an administrative appeal and subsequently obtain judicial review. *Grant*, 989 F.2d at 1346.

A claimant pursues review of the findings of the Appeals Council in the district court under 42 U.S.C. § 405(g). *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)."Prejudice such as will disqualify a judicial officer (whether judge or hearing examiner) refers to prejudgment based on information obtained outside the courtroom, rather than to rulings, even if hasty or errant, formed on the basis of record evidence and other admissible materials and considerations." *Pearce*, 871 F.2d at 63. (citations omitted).  In this case, Plaintiff sought reversal of the ALJ's decision, or in the alternative, remand of the case for a new hearing with a different ALJ.  R. 550.

In addition to the repeated errors the ALJ made in mischaracterizing Plaintiff's testimony, there was a strange colloquy initiated by the ALJ, who asked Plaintiff about a "narcotic dependence" without telling her the basis for his question:

> Q.  I hate to ask you about this but I see a reference in here to narcotic dependence. Who has provided you with treatment for narcotic dependence?
>
> A. Who?
>
> Q. Yes, ma'am.
>
> A. I don't understand the question.
>
> Q. Have you had any treatment, any rehabilitation, and detoxification?
>
> A. No. Who said I have a narcotic dependance?
>
> Q. It's in the record so that's why I'm asking about it.
>
> A. Oh, I'm not aware of that. I mean, I am prescribed narcotics but I've never gone to –
>
> Q. Okay.
>
> A. -- anyone and said I had a problem or --
>
> Q. That's what I'm talking about it. Have you had any treatment for any problem regarding narcotic dependence?
>
> A. No, sir.
>
> Q. Okay. All right.

R. 622.  There is no discussion of a "narcotic dependence" in the ALJ's opinion, even though a drug addiction may be the basis for a denial of benefits.  *See* 20 C.F.R. § 404.1535(b)(1); *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001) (the Social Security Act precludes the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled).

In this case, the sole mention in the Administrative Record of a "narcotic dependence" for Plaintiff's prescribed medications does not say anything about "rehabilitation or detoxification," but

nevertheless appears to have colored the ALJ's analysis of the Record and his attitude toward Plaintiff. There is a single mention of "narcotic dependency" listed in the "Impression" section in records from the Back Center (Dr. Zaidi and Nurse Practitioner Williams) on October 5, 2012. R. 881-82. On that date, Plaintiff was given a random urine drug screen "which tested negative for THC." R. 881-82. Plaintiff had previously had random urine drug screens and tested positive for opiates, barbiturates, and benzodiazepines "for which she ha[d] valid prescriptions." R. 890; *see also* R. 899 (positive for barbiturates, benzodiazepine, and oxycodone; patient has prescriptions for Fioricet, Valium, and Percocet[2]). Dr. Zaidi explained at that time the goal was to be weaning Plaintiff down off the narcotics and "we cannot continue to prescribe her these medications if she is going to use marijuana[3]." R. 883, 900. There is no other reference in the Record to "narcotic dependency" and the physician does not explain any additional restrictions; in fact, he refilled her prescription for the narcotic Percocet and Celebrex after that time. R. 880. Subsequent records from the Back Center do not list her as having a "narcotic dependency" and those physicians continued to prescribe pain medications. R. 878-80. In early 2013, Plaintiff moved to Dr. Olsson on the recommendation of the primary care doctor, and he also continued to prescribe narcotics. R. 976-86.

Sentence four of 42 U.S.C. § 405(g) states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Other courts have held that remand to a different ALJ may be an appropriate remedy, even without an express finding of bias. *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222-23 (E.D.N.Y. 1998) (court ordered remand to a different ALJ without expressly finding bias, because of the ALJ's "troubling measure of insensitivity," and because the ALJ mischaracterized and misunderstood evidence); *Ortiz*

---

[2]Percocet is a combination of oxycodone and acetaminophen used to relieve moderate to severe pain. *See* www.drugs.com (visited on July 5, 2016).

[3]On two occasions, Plaintiff's drug screen was positive for TCH and she was warned about use of marijuana with narcotic prescriptions. R. 883, 900.

*v. Chater*, No. 95cv3126ERK, 1997 WL 50217, at * 3 n. 1 (E.D.N.Y. Jan. 30, 1997) (district judge ordered the case reassigned to a different ALJ, even though the judge did not apprehend bias in the earlier decisions); *Miles*, 84 F.3d at 1401 (Eleventh Circuit ordered remand to a different ALJ because improper statements implying that a particular doctor always found a disability "compromised" the process). In *Hartnett*, the district court remanded the case for transfer to different ALJ, despite recognizing that the decision is generally for the Commissioner to make. *Hartnett,* 21 F. Supp. 2d at 222-23. The court stated that there are "certain circumstances" where "Courts have not hesitated to order the Commissioner to transfer a case to a different ALJ on remand." *Id*. at 222.

It was not appropriate for the ALJ to ask Plaintiff about a "narcotic dependency" and insinuate she had a problem at the level requiring rehabilitation and detoxification, and then fail to give her the informed opportunity to refute that notation from the medical records at the hearing as well as in the ALJ's decision because it appears to have played a part in denying her benefits. On remand, the Commissioner will assign the case to a different administrative law judge. *King v. Commissioner*, No. 6:07-cv-537-Orl-22DAB, 2008 WL 4095493 (Aug. 29, 2008) (holding that the assignment of the case to a new ALJ will prevent the plaintiff from raising allegations of bias by this same ALJ in any future appeal in this case and is within the power of the court); *Flentroy-Tennant v. Astrue*, Case No. 3:07-cv-101-J-TEM, 2008 WL 876961 (M.D. Fla. March 23, 2008) (holding reassignment was warranted on the second remand where the court did not find "the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion").

### C. Other issues to be addressed on remand

Plaintiff also argues the ALJ erred in giving "little weight" to the 2013 retrospective opinion of Plaintiff's treating pain management physician, Dr. Esmailzadeh who completed a Physical Restrictions Evaluation of Plaintiff for the time period beginning May 2008.   R. 1006. Dr. Esmailzadeh opined Plaintiff would need to lay down/recline for 2 hours to avoid aggravation of her

injuries would have difficulty reaching above her head, fine finger manipulation, and push/pull with hands, due to multiple disc herniations in the lumbar spine, history of surgery medical history, exams, and MRI findings. R. 1006-07.  The ALJ's decision discounted Dr. Esmailzadeh's opinion because he "did not give an appropriate basis to support his opinion that his evaluation could go back to 2008" since his treatment did not begin until January 8, 2010. R. 567.

Plaintiff argues that Dr. Esmailzadeh worked for the Back Center.  As such, according to a letter submitted to the Appeals Council, the Back Center had records of Plaintiff's treatment dating back as early as 2003 (*see* R. 544), which would serve as the reasonable basis for Dr. Esmailzadeh's retrospective opinion. *See* R. 650-51.  On remand, the ALJ will address Dr. Esmailzadeh's opinion regarding Plaintiff's condition as a retroactive medical opinion.  *See, e.g., Mason v. Commissioner*, 430 Fed. Appx. 830, 832 (11th Cir. 2011) (retrospective diagnoses are accorded to deference where corroborated by evidence contemporaneous with the relevant period).

Plaintiff also argues that the ALJ erred in failing to address the effect of her severe and chronic migraine headaches, which date back to before the relevant period in 2008, in combination with her other impairments on her RFC.  As early as 2005-2006, medical records indicate that Plaintiff had a history of chronic migraine headaches and the medications did not always alleviate them.  R 255, 258-65.  In May 2008, Plaintiff's primary care physician, Dr. Stewart, prescribed Topamax, and  Dr. Joyner subsequently switched her to that he switched her to Fioricet.  R. 334, 339.  The headaches continued and in May 2009, Plaintiff reported severe chronic headaches to her neurologist, Dr. Prusinski, three to four times a week, associated with photophobia, phonophobia, and nocturnal awakening. R. 520. Dr. Prusinski diagnosed headaches with malignant characteristics - rule out tumor. R. 522. At the first hearing, Plaintiff testified that she has headaches everyday that varied in severity - anywhere from 3 and 7 on the pain scale, and he thought that the headaches were a side effect of the pain medications. R. 47-48. Plaintiff argues that, if headaches occur in an unpredictable manner, then

they would preclude employment. Doc. 18 at 23 (citing *Davis v. Astrue*, 478 F. Supp. 2d 1342 (N.D. Ala. 2007)).  On remand, the ALJ will address the effect of Plaintiff's severe headaches during the relevant period in 2008 in combination with her other impairments on her RFC.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 20, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record